## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
### www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | § | (Chapter 11) |
| | § | |
| ARROW AIR, INC. AND | § | Case number 10-28831-AJC |
| ARROW AIR HOLDINGS CORP.[1] | § | Case number 10-28834-AJC |
| | § | |
| | § | (Jointly Administered under |
| Debtors. | § | Case number 10-28831-AJC) |

## DEBTORS' EXPEDITED APPLICATION FOR ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 330 AND FED. R. BANKR. P. 2014(a) AUTHORIZING EMPLOYMENT AND RETENTION OF SEABURY ADVISORS, LLC AS FINANCIAL ADVISORS FOR DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE

### (EXPEDITED HEARING REQUESTED FOR JULY 22, 2010 AT 10:30 A.M.[2])

Arrow Air, Inc. ("Arrow") and Arrow Air Holdings Corp. ("Holdings") (collectively, the "Debtors"), apply to the Court for the entry of an order authorizing them to retain and employ Seabury Advisors, LLC ("Seabury") as their financial advisor in these chapter 11 cases *Nunc Pro Tunc* to the Petition Date, pursuant to sections 327(a) and 330 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and pursuant to the terms of the Amended Seabury Engagement Agreement for Providing Restructuring & Investment Banking Services (the "Engagement Letter") and Indemnification Agreement (the "Indemnification Agreement") dated June 30, 2010 (collectively, the "Seabury Agreement"),[3] a

---

[1] The last four digits of the taxpayer identification number for Arrow Air, Inc. is 9045 and Arrow Air Holdings Corp. is 0895. The Debtors' address is 1701 NW 63rd Avenue, Building 712, Miami, FL 33126.

[2] The Court is hearing other matters in the Debtors' cases on July 22, 2010 at 10:30 a.m. The Debtors request that the Court also hear this Application on July 22, 2010 so that the Debtors may resolve this matter quickly and administer their estates efficiently.

[3] Unless otherwise defined, capitalized terms used herein have the meanings ascribed to them in the Seabury Agreement. Any references to or summaries of the Seabury Agreement herein are qualified by the express terms of the Seabury Agreement, which shall govern if there is any conflict.

copy of which is attached hereto as **Exhibit A**.  In support of this Application, the Debtors rely

on the *Affidavit of Doug Yakola in Support of First Day Pleadings*.

## I.      Jurisdiction

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper in this

District under 28 U.S.C. §§ 1408 and 1409.

## II.      Background

2.      The Debtors ceased scheduled service on June 29, 2010.  After cessation of

scheduled service, the Debtors terminated all of their employees, except for 132 employees

whom the Debtors retained to help wind down their businesses.  The Debtors filed for relief

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on June 30, 2010

(the "Petition Date").  The Debtors continue to manage their property and assets as debtors-in-

possession under 11 U.S.C. §§ 1107(a) and 1108.

3.      A full description of the Debtors' business operations, corporate structure, and

reasons for commencing these bankruptcy cases is contained in the *Affidavit of Doug Yakola in*

*Support of First Day Pleadings*, which was filed on the Petition Date.  The Affidavit was filed on

the Petition Date, and is incorporated herein by reference.  Additional facts supporting the relief

requested in this Application are included below and in the Declaration of Michael B. Cox,

Senior Managing Director at Seabury (the "Cox Declaration"), which is attached hereto as

**Exhibit B**.

## III.      Relief Requested

4.      By this application (the "Application"), the Debtors seek entry of an order

pursuant to Bankruptcy Code sections 327(a) and 330 and Bankruptcy Rules 2014(a) and 2016,

authorizing the employment and retention of Seabury as financial advisors for the Debtors, for the purpose of providing financial advisory services during these chapter 11 cases, all in accordance with the terms of the Seabury Agreement.

5.    Seabury has one of the largest investment banking, restructuring, and management consulting practices in the world dedicated to the transportation sector, with its principal focus on the aviation and aerospace industries.  Seabury has extensive experience working with financially troubled companies in complex financial restructurings both out-of-court and during chapter 11 cases.  Seabury served as advisors with respect to financial restructurings, new capital raisings, aircraft advisory services and/or other advisory assignments to some of the world's largest and most sophisticated airlines, including Air Canada, Northwest Airlines, Avianca, Continental Airlines, Gemini Air Cargo, and US Airways Group, among many others.

6.    The Debtors seek to retain Seabury as their financial advisors because, among other things, Seabury and its senior professionals have an excellent reputation for providing high quality financial advisory services to airlines in bankruptcy.  Additionally, as a result of the prepetition services provided to the Debtors, Seabury has developed knowledge of the Debtors' financial and business operations.

7.    Prepetition, the Debtors originally retained Seabury as financial advisor on April 15, 2010.  During this prepetition period, Seabury developed knowledge of the Debtors' financial and business operations and worked with the Debtors on numerous matters, including:

(a)    Meeting with the Debtors' management team on numerous occasions and conducting due diligence to better understand the Debtors' business, operations, assets, debt structure, properties, financial condition and prospects;

(b)    Assisting the Debtors to develop and evaluate potential restructuring

3

        alternatives for the Debtors, including meetings with a variety of potential investors;

    (c)    Advising and meeting with management with respect to various financial matters;

    (d)    Assisting the Debtors in evaluating their businesses, assets and operations; and

    (e)    Meeting with the other professionals retained by the Debtors in connection with the restructuring process.

8.    As a result of representing the Debtors on such matters, Seabury has acquired extensive knowledge of the Debtors and their businesses and is uniquely familiar with the Debtors' financial affairs, debt structure, operations and related matters.  In providing prepetition services to the Debtors in connection with these matters, Seabury's professionals have worked closely with the Debtors' management and other professionals.  Seabury played an integral role prepetition in assisting the Debtors in preparing for the commencement of these cases.  Accordingly, Seabury has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these cases.  Should the Court approve the Debtors' retention of Seabury as financial advisors, Seabury will continue, without interruption, to perform the services for the Debtors as described herein.

9.    Seabury will provide certain financial advisory services with respect to developing and implementing programs, negotiations and/or transactions to liquidate certain assets and obligations of the Debtors.  Seabury's resources, capabilities and experience in advising financially distressed airlines will be crucial to the Debtors' winding down their businesses in an effective and efficient manner.  The experienced financial advisors and consultants at Seabury will fulfill a critical service that complements the services provided by the Debtors' other bankruptcy professionals.  For these reasons, the Debtors require the advisory and

consulting services of Seabury.

10.    Because of the various creditor constituencies as well as the Debtors' financial condition, the Debtors determined the need to hire a capable financial advisory firm to assist in the bankruptcy cases.  Prior to retaining Seabury, the Debtors' senior management considered proposals from other financial advisory firms.  The Debtors evaluated each firm on a number of criteria, including: the overall bankruptcy experience of each firm and their professionals; the overall financial advisory capabilities of such firm; the firm's experience in advising similar companies in chapter 11; the likely attention of the senior personnel of the firm; and the compensation to be charged.  After due consideration of the above and as an exercise of their business judgment, the Debtors concluded that Seabury was best qualified to provide financial advisory services to the Debtors at a reasonable level of compensation.  The terms of Seabury's retention were negotiated in good faith and on an arms-length basis in light of, among other things, proposals by other prospective financial advisors.

## IV.    Services Rendered

11.    If this Application is approved, Seabury will provide such financial advisory services (the "Financial Advisory Services"), as described in greater detail in the Engagement Letter, as Seabury and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course of the chapter 11 cases, including, but not limited to, the following:[4]

a.    Assist in the evaluation of the Debtors' businesses and prospects;

b.    Evaluate and respond as needed regarding the sale process and related capital raising efforts to date;

c.    Evaluate and/or prepare liquidation analyses;

d.    Assist the Debtors in liquidation efforts, as needed;

---

[4] Any description of the Seabury Agreement herein is a summary.  To the extent that this Application and the terms of the Seabury Agreement are inconsistent, the terms of the Seabury Agreement shall control.  Capitalized terms used in this Application without definition shall have the meanings assigned to them in the Seabury Agreement.

e.     Assist in the development of the Debtors' long-term business plans (if any) and related financial projections;

f.     Assist in the development of financial data and presentations to the Debtors' Boards of Directors, various creditors, lenders, lessors and other third parties;

g.     Analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

h.     Analyze various restructuring scenarios on the value of the Debtors and the recovery of those stakeholders impacted by the restructuring;

i.     Provide strategic advice with respect to restructuring or refinancing the Debtors' obligations;

j.     Participate in negotiations among the Debtors, their creditors, suppliers, lenders, lessors and other interested parties;

k.     Provide court testimony as required relating to all aspects of the Debtors' restructuring plans, business plan and expert witness testimony as needed;

l.     If requested by the Debtors, assist the Debtors in developing various strategies and options for negotiating with their pilot union;

m.     Provide additional consulting services as requested by the Debtors from time to time.

12.    The Financial Advisory Services set forth in the Engagement Letter and summarized above do not encompass other financial advisory services or transactions that may be undertaken by Seabury at the request of the Debtors not set forth in the Engagement Letter. The terms and conditions of any such financial advisory services, including compensation arrangements, would be set forth in a separate written agreement between the Debtors and Seabury and would be subject to any necessary Court approval.

13.    The Debtors submit that Seabury is well qualified and able to provide the Financial Advisory Services. Seabury has indicated a willingness to act on behalf of the Debtors, on the terms described above and subject itself to the jurisdiction of the Court. The Debtors have been advised by Seabury that it will endeavor to coordinate with the other retained professionals in these bankruptcy cases to eliminate unnecessary duplication or overlap of work.

## V.    Disinterestedness of Professionals

14.    In connection with this retention, Seabury obtained from counsel to the Debtors the names of individuals and entities, including the Debtors' top 20 unsecured creditors, equity security holders and secured creditors, which may be parties-in-interest in these chapter 11 cases (collectively, the "Potential Parties-in-Interest"), and Seabury researched its "active deal list" that lists all of the active engagements that Seabury currently represents, and questioned its partners, to ascertain its relationships with the Potential Parties-in-Interest.

15.    To the best of the Debtors' knowledge, information and belief, neither Seabury nor any principal of Seabury has any connection with the Debtors or any Potential Party-in-Interest or the Office of the United States Trustee in the matters for which Seabury is proposed to be retained except as disclosed in the Cox Declaration.

16.    Prior to the Petition Date and since their retention on April 15, 2010, Seabury performed certain professional services for the Debtors.  Seabury received payments prior to the Petition Date totaling $362,500 for fees and $26,314.82 for expenses representing payment in full for prepetition services.   Seabury also received a prepetition retainer in the amount of $73,685.18 for services to be rendered in connection with these casse (the "Retainer").  Seabury requests that any allowed interim fees and expenses will be paid pursuant to the terms of any order entered by the Court authorizing the payment of interim compensation in these cases.

17.    Seabury has not been an underwriter for any offering of any security of the Debtors.

18.    To the best of the Debtors' knowledge, Seabury is a "disinterested person," as such term is defined in Bankruptcy Code section 101(14) and as required under Bankruptcy Code section 327(a).  The Cox Declaration, executed on behalf of Seabury in accordance with

Bankruptcy Code section 327(a) and Bankruptcy Rule 2014, is filed contemporaneously herewith.  The Debtors' knowledge, information, and belief regarding certain of the matters set forth in this Application are based on, and are made in reliance on, the Cox Declaration.

19.    The Debtors submit that the retention of Seabury on the terms and conditions set forth herein is in the best interests of the Debtors, their creditors and all parties-in-interest.

## VI.    Professional Compensation

20.    Seabury has agreed to represent the Debtors for compensation at the rates agreed on between the parties pursuant to the Engagement Letter.  As more fully described in the Engagement Letter, in consideration of the Financial Advisory Services provided by Seabury, the Debtors have agreed to pay Seabury fees based on actual hours worked multiplied by Seabury's standard hourly rates.  Seabury's standard hourly rates are as follows:

| Title | Rate |
|---|---|
| Chief Executive Officer | $990 |
| Senior Managing Director | $895 |
| Managing Director | $805 |
| Executive Director | $765 |
| Senior Vice President | $730 |
| Director | $730 |
| Vice President | $625 |
| Senior Associate | $515 |
| Associate | $485 |
| Senior Analyst | $345 |
| Analyst | $280 |

21.    Seabury will seek compensation and reimbursement of expenses, as specified in the Engagement Letter.  With respect to the out-of-pocket expenses for which Seabury will seek reimbursement:  (i) in connection with the incurrence of out-of-pocket expenses, Seabury will not make a profit on those out-of-pocket expenses, (ii) in charging for out-of-pocket expenses, Seabury will not include in the amount for which reimbursement is sought the amortization of

any investment, equipment or capital outlay (except to the extent that such amortization is included within the permitted allowable amounts for photocopies and facsimile transmission) and (iii) in seeking reimbursement for out-of-pocket expenses which Seabury reasonably incurred (including amounts for travel and lodging, data processing and communication charges, courier services and other appropriate expenditures purchased or contracted for from a third party), Seabury will request reimbursement only for the amount billed to Seabury by the third party vendor and paid by Seabury to such vendor.

22.     The fees described above are at rates and in accordance with practices customarily employed by Seabury and are generally accepted by Seabury's clients.  The rates described above are comparable to rates generally charged by financial advisory firms of similar stature to Seabury and for comparable engagements, both in chapter 11 and out-of-court.

23.     As part of the overall compensation payable to Seabury under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification obligations as described in the Indemnification Agreement[5].  Seabury and the Debtors believe that such provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11.  *See, e.g., In re Comdisco, Inc.,* No 02-C-1 174 (N.D. Ill. Sept. 23, 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors); *In re United Artists Theatre Co.*, No. 00-3514-SLR (Bankr. D. Del. Dec. 1, 2000) (order authorizing the indemnification of Houlihan Lokey Howard & Zukin Capital by the debtors); *In re Joan & David Halpern, Inc.,* 248 B.R. 43 (Bankr. S.D.N.Y. 2000), *aff'd*, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000); *In re*

---

[5]     The Indemnification Agreement provides that the Debtors will indemnify Seabury, except "to the extent that it is finally judicially determined, or expressly stated in an arbitration award, that such Liabilities resulted primarily from the willful misconduct or gross negligence (which in all cases hereunder will be deemed to include any violation of applicable law) of the Indemnified Person seeking indemnification."

*CTC Communications Group Inc.,* No. 02-12873 (PJW) (Bankr. D. Del. Nov. 15, 2002) (order authorizing retention of Miller Buckfire Lewis & Co. on similar terms); *In re PC Landing Corp.*, No. 02-12086 (PJW) (Bankr. D. Del. Oct. 10, 2002) (same); *In re Metrocall Inc.*, No. 02-11579 (RB) (Bankr. D. Del. July 8, 2002) (order authorizing retention of Lazard Freres & Co. under similar terms); *In re Kaiser Aluminum Corp.*, No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (same); *In re W.R. Grace & Co.*, No. 01-01139 (JJF) (Bankr. D. Del. June 22, 2001) (order authorizing retention of Blackstone Group under similar terms); *In re Ameriserve Food Distribution, Inc.*, Case No. 00-0358 (PJW) (Bankr. D. Del. May 9, 2000) (order authorizing retention of Houlihan Lokey Howard & Zukin Capital); *In re National Steel Corporation*, No. 02-08699 (JHS) (Bankr. N.D. Ill. Mar. 20, 2002); *In re Conseco Inc.*, 02-49672 (CAD) (Bankr. N.D. Ill. Jan. 14, 2003) (order authorizing retention of Lazard Freres & Co.); *In re Oxford Automotive, Inc.*, No. 02-41400-R (SWR) (Bankr. D. Mich.  Apr. 30, 2002) (same).

24.     As set forth in the Cox Declaration, Seabury has not shared or agreed to share any of its compensation from the Debtors with any other person, other than a managing director, professional or employee of Seabury, as permitted by Bankruptcy Code section 504.

## VII.   Fee Applications

25.     During the course of these cases, Seabury will apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these chapter 11 cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for this district (the "Local Bankruptcy Rules"), and any orders entered in these cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred.

26.     Seabury's professionals shall file time records in accordance with the Guidelines

for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases. Seabury also will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.    Seabury's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter, subject to approval by the Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to retain Seabury as their financial advisor pursuant to the terms of the Engagement Letter, Indemnification Agreement, and 11 U.S.C. §§ 327(a) and 330 and (ii) granting such other and further relief as is just and proper.

Dated July 13, 2010.

Respectfully submitted,

ARROW AIR HOLDINGS CORP.

By: _____

Its:    Chief Restructuring Officer

- and -

ARROW AIR, INC.

By: _____

Its:    Chief Restructuring Officer

H-842463_2.DOC

**<u>Exhibit A</u>**



**Seabury Advisors LLC**
1350 Avenue of the Americas
25th Floor
New York, NY 10019, USA
T +1 212 284 1133
F +1212 284 1144
W www.seaburygroup.com

June 30, 2010

Arrow Air Holdings Corporation
1701 NW 63rd Avenue
Building 712
Miami, FL 33126

Attention:   Mr. Douglas Yakola
             Chief Restructuring Officer

*Re:  Amended Seabury Engagement Agreement for Providing Restructuring & Investment Banking Services*

Gentlemen:

We are pleased to provide under this agreement (this "*Agreement*"), the terms and conditions under which Seabury Advisors LLC, together with its broker-dealer affiliate, Seabury Securities LLC and or one or more of their affiliates (collectively, "*Seabury*"), will serve as sole financial advisor, restructuring advisor and investment banker to Arrow Air Holdings Corporation and its subsidiaries and affiliates (collectively, "*Arrow*" or the "*Company*") and will provide certain strategic and financial advisory services with respect to developing and implementing programs, negotiations and/or transactions to restructure the Company (the "Restructuring").   This Agreement supercedes any previous agreements between Seabury and the Company.

For purposes hereof, the term "*Company*" includes any entity that the Company may form or invest in to consummate a restructuring.   This Agreement sets forth below and in any schedules or annexes to this Agreement the terms and conditions under which Seabury shall provide the services described in Section 1 below to the Company.

**Section 1.   Services.**

Seabury shall provide the Company with advice and assistance for the services described in this Section 1 (collectively the "*Services*") where and when requested by the Company, under the engagement leadership of Michael B. Cox.

   **A.**   **General Financial Advisory Services.**   If requested by the Company, Seabury hereby agrees to provide strategic and tactical advice as follows:

   1) Assist in the evaluation of the Company's businesses and prospects;
   2) Evaluate and respond as needed regarding the sales process and related capital raising efforts to date;
   3) Evaluate and/or prepare liquidation analyses;
   4) Assist the Company in liquidation efforts, as needed;
   5) Assist in the development of the Company's long-term business plan and related financial projections;
   6) Assist in the development of financial data and presentations to the Company's Board of Directors, various creditors, lenders, lessors and other third parties;
   7) Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;
   8) Analyze various restructuring scenarios on the value of the Company and the recovery of those stakeholders impacted by the restructuring;

Arrow Cargo
Seabury Engagement Agreement
June 30, 2010
Page 2

9) Provide strategic advice with respect to restructuring or refinancing the Company's obligations;

10) Participate in negotiations among the Company, its creditors, suppliers, lenders, lessors and other interested parties; and

11) Provide court testimony as required relating to all aspects of the Company's restructuring plans, business plan and expert witness testimony as needed.

**B.**    ***Labor Negotiations.*** If requested by the Company, Seabury shall assist the Company in developing various strategies and options for negotiating with its pilot union.

**C.**    ***Other Services.*** Seabury agrees to make available to the Company additional services as requested by the Company from time to time under either (i) supplemental retainer fees and/or success fee based compensation or (ii) hourly billed compensation.

**Section 2. Compensation.**

The following fees apply to Seabury.

**A.**    ***Hourly Fees.*** The Company agrees to pay to Seabury for Services outlined in Section 1 based upon actual hours worked multiplied by its standard hourly rates during the Term of the Agreement as billed on a monthly basis.

**B.**    ***Wire Transfers.*** All payments for services performed under Sections 1 shall be paid to Seabury Advisors, LLC Account # 20000-3772-4425 Wachovia Bank, N.A. 190 River Road, Summit, NJ 07901 ABA # 031-201-467, Reference "Arrow Cargo 0597", unless alternative instructions are made by Seabury in writing to the Company.

**Section 3. Expenses.**

The Company will reimburse Seabury promptly upon receipt of monthly written notice for its reasonable out-of-pocket expenses incurred by Seabury in connection with the services to be rendered under the Agreement. Seabury personnel shall be reimbursed for coach class travel (or its equivalent) except for international travel greater than five (5) hours. The Company and its representatives shall be entitled to review and/or audit Seabury's records of such expenses during normal business hours. Upon termination of this Agreement, the Company shall reimburse Seabury only for such reasonably incurred out-of-pocket expenses incurred or accrued prior to termination. Invoices submitted to the Company pursuant to this Section 3 will, in each case, include adequate detail including employee name, date of expense charge, expense type and amount.

**Section 4. Term.**

The Company shall retain Seabury's services under Section 1 through the *earlier to occur* of (i) the effective date of a confirmed Plan of Reorganization or (ii) the date this Agreement is subject to an early termination by the Company under provisions of Section 5 below.

**Section 5. Termination.**

Except as otherwise provided under any separate written agreement with the Company:

Arrow Cargo
Seabury Engagement Agreement
June 30, 2010
Page 3

(i)  The Company may terminate the Agreement at any time without further liability or obligation whatsoever upon fifteen (15) days' prior written notice; provided, however, (a) no such termination will affect Seabury's right to receive all fees and expenses as described in Sections 2 and 3, that have accrued prior to such termination but are unpaid, and expense reimbursements due and payable under this Agreement and (b) Seabury shall be entitled to certain fees as set forth in clauses (iv) and/or (v) ("Termination Without Cause").

(ii)  The Company may terminate the Agreement by written notice to Seabury without further liability or obligation whatsoever on the part of the Company (x) at any time it determines in good faith that Seabury has materially defaulted in the performance of its obligations hereunder; and (y) the Company provides Seabury fifteen (15) business days' prior written notice of its intention to terminate the Agreement unless Seabury remedies any such failure to perform to the satisfaction of The Company within such period ("Termination for Cause").

(iii)  Upon expiration of the term of the engagement as specified in Section 4, the Company shall pay Seabury all professional fees, consulting fees and success fees, as described above that have accrued prior to such termination but are unpaid, and expense reimbursement due and payable under this Agreement are due and payable upon completion of this assignment.

(iv)  Upon Termination for Cause as provided in clause (ii) above, the Company shall pay Seabury all fees and expense reimbursements that have accrued prior to such termination but remain unpaid.

(v)  Notwithstanding any of the foregoing, Sections 3, 6, 7, 8, 9 of the Agreement shall survive the expiration or termination of the Agreement.

### Section 6.  *Governing Law.*

This Agreement, and any claim related directly or indirectly to this Agreement, will be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.  The Company and Seabury irrevocably submit to the non-exclusive jurisdiction of any court of the State of New York for the purpose of any suit, action or other proceeding arising out of this letter agreement or the engagement hereunder. This Agreement, and any claim related directly or indirectly to this Agreement, will be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

### Section 7.  *Indemnification.*

The Company agrees to indemnify Seabury and other parties as provided in the Annex A hereto.  Annex A is incorporated by reference into this engagement letter.

### Section 8.  *Miscellaneous.*

***Seabury's Other Relationships.***  The Company acknowledges that Seabury provides financial advisory and investment banking services to a broad array of companies in the aviation and transportation sectors.  The Company acknowledges that these and other relationships exist, and agree that such relationships cannot be subsequently claimed as a reason for termination of this Agreement except if Seabury breaches in any material respect its fiduciary responsibility to the Company in the performance of its responsibilities hereunder.  Additionally, the Company accepts that Seabury is bound by confidentiality and fiduciary obligations to other clients and has specifically advised the Company that Seabury is obligated not to use any confidential non-public information obtained from such other engagements to advise the Company.

***Seabury's Obligations.***  All services to be performed by Seabury hereunder shall be performed in good faith and with at least that level of care and diligence as customarily exercised by other international financial advisors and international consultants similarly employed or engaged in providing similar services to the aviation market.  Seabury agrees that all information respecting this transaction provided to Seabury by the

Arrow Cargo
Seabury Engagement Agreement
June 30, 2010
Page 4

Company, or acquired by Seabury in the course of its engagement hereunder, shall be kept confidential by Seabury in compliance with that separate confidentiality agreement between the Company and Seabury and such information shall be used solely to provide services to the Company hereunder. No such information shall be disclosed to any third party without the Company's prior written consent unless, at the time of such disclosure, such information (i) is generally available to and known by the public (other than as a result as a disclosure directly or indirectly by Seabury); (ii) becomes available to Seabury on a non-confidential basis from a source other than the Company (provided such source is not known to be bound by a confidentiality agreement or relationship with the Company); or (iii) is otherwise required to be disclosed by law (including by subpoena, civil investigative demand or similar process), in which event Seabury shall give prompt notice to the Company before disclosure and cooperate in good faith to permit the Company to seek a protective order or other appropriate remedy.

***Company's Obligations.*** The Company agrees that materials prepared by Seabury for its use are for the exclusive use of the Company. The Company agrees that Seabury's work product cannot be shared with other parties without advance written consent of Seabury. Additionally, the Company agrees not to disclose any of the terms and conditions of the Agreement to any third party unless required by applicable law or regulation, except as expressly agreed to by Seabury.

**Section 9.  Execution.**

This Agreement may not be amended or modified except in writing signed by the Company and Seabury and may be executed in two or more counterparts, each of will be deemed to be an original, but all of which will constitute one and the same agreement. All rights, liabilities and obligations hereunder will be binding upon and inure to the benefit of the Company, Seabury and their respective successors and assigns.

[THE REMAINDER OF THIS PAGE INTENDED TO REMAIN BLANK]

Arrow Cargo
Seabury Engagement Agreement
June 30, 2010
Page 5

Please confirm our mutual understanding of this engagement by signing and returning to us the enclosed duplicate copy of this letter agreement.  We are pleased that you have engaged us to act as your financial advisor and are looking forward to working with you on this assignment.

Very truly yours,

SEABURY ADVISORS LLC


By: _____
      Michael B. Cox
      Senior Managing Director, Global Head of Restructuring

SEABURY SECURITIES LLC


By: _____
      Michael B. Cox
      Senior Managing Director, Global Head of Restructuring


Accepted and agreed to this 30 ___ day of June 2010


ARROW AIR HOLDINGS CORPORATION


By: _____
      Douglas Yakola
      Chief Restructuring Officer

Arrow Cargo
Seabury Engagement Agreement
June 30, 2010
Page 6

## ANNEX A

### *Indemnification Agreement*

In connection with any services or matters that are the subject of or arise out of the engagement letter or Seabury's engagement to advise and assist the Company with the matters set forth in this engagement letter, the Company hereby agrees to indemnify and hold harmless Seabury, its affiliated companies, and each of Seabury's and such affiliated companies' respective officers, directors, agent, employees, and controlling persons (within the meaning of each of Section 20 of the Securities Exchange Act of 1934 and Section 15 of the Securities Act of 1933) (each of the forgoing, including Seabury, being hereinafter referred to as an "*Indemnified Person*") to the fullest extent permitted by law from and against any and all losses, claims, damages, reasonable expenses (including reasonable fees, disbursements, and other charges of counsel), actions, proceedings, arbitration or investigations (whether formal or informal) (all of the foregoing being referred to as "*Liabilities*"), based upon, relating to, or arising out of such engagement or any Indemnified Person's role therein; *provided, however,* that the Company shall not be liable under this paragraph: (a) for any amount paid in settlement of claims without the Company's consent, unless the Company's consent is unreasonably withheld or (b) to the extent that it is finally judicially determined, or expressly stated in an arbitration award, that such Liabilities resulted primarily from the willful misconduct or gross negligence (which in all cases hereunder will be deemed to include any violation of applicable law) of the Indemnified Person seeking indemnification. In connection with the Company's obligation to indemnify for expenses as set forth above, the Company further agrees to reimburse each Indemnified Person for all such expenses (including reasonable fees, disbursements, and other charges of counsel) as they are incurred by such Indemnified Person; *provided, however,* that if an Indemnified Person is reimbursed hereunder for any expenses, the amount so paid shall be refunded if and to the extent it is finally judicially determined, or expressly stated in an arbitration award, that the Liabilities in question resulted primarily from the willful misconduct or gross negligence of such Indemnified Person. The Company hereby agrees that neither Seabury nor any other Indemnified Person shall have any liability to the Company (or anyone claiming through the Company or in the Company's name) in connection with Seabury's engagement by the Company except to the extent that such Indemnified Person has engaged in willful misconduct or been grossly negligent.

Promptly after Seabury receives notice of the commencement of any action or other proceeding in respect of which indemnification or reimbursement may be sought hereunder, Seabury will notify the Company thereof; but the omission so to notify the Company shall not relieve the Company from any obligation hereunder unless, and only to the extent that, the Company shall have been materially prejudiced by such failure. If any such action or other proceeding shall be brought against any Indemnified Person, the Company shall, upon written notice given reasonably promptly following Seabury's notice to the Company of such action or proceeding, be entitled to assume the defense thereof at the Company's expense with counsel chosen by the Company and reasonably satisfactory to such Indemnified Person; *provided, however,* that any Indemnified Person may, at its own expense retain separate counsel to participate in such defense. Notwithstanding the foregoing, such Indemnified Person shall have the right to employ separate counsel at the Company's expense and to control its own defense of such action or proceeding if the named parties to any such claim or action include such Indemnified Person and the Company and in the reasonable opinion of counsel to such Indemnified Person there are or may be legal defenses available to such Indemnified Person or to other Indemnified Persons that are different from or additional to those available to the Company; *provided, however,* that in no event shall the Company be required to pay fees and expenses under this indemnity for more than one firm of attorneys (in addition to local counsel) in any one legal action or group of related legal actions. The Company agrees that it will not, without the prior written consent of Seabury, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, or proceeding relating to the matters contemplated by Seabury's engagement (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, or consent includes an unconditional release of Seabury and each other Indemnified Person from all liability arising or that may arise out of such claim, action, or proceeding.

Arrow Cargo
Seabury Engagement Agreement
June 30, 2010
Page 7

If the indemnification of an Indemnified Person provided for hereunder is unavailable for any reason, then the Company agrees, in lieu of indemnifying such Indemnified Person, to contribute to the amount paid or payable by such Indemnified Person as a result of such Liabilities in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company on the one hand and by Seabury on the other from the transactions in connection with the matters for which Seabury has been engaged.  If the allocation provided in the preceding sentence is not permitted by applicable law, then the Company agrees to contribute to the amount paid or payable by such Indemnified Person as a result of such Liabilities in such proportion as is appropriate to reflect not only the relative benefits referred to in such preceding sentence but also the relative fault of the Company and of such Indemnified Person in connection with the matters to which such liabilities relate, and other equitable considerations.

The relative benefits received or sought to be received by the Company on the one hand and by Seabury on the other shall be deemed to be in the same proportion as (a) the total value of the transactions with respect to which Seabury has been engaged bears to (b) the fees paid or payable to Seabury with respect to such engagement.

The rights accorded to Indemnified Persons hereunder shall be in addition to any rights that any Indemnified Person may have at common law, by separate agreement or otherwise and shall be binding on and inure to the benefit of any successors, assigns and personal representatives of us and each indemnified party.

THE COMPANY HEREBY CONSENTS, SOLELY FOR THE PURPOSE OF ALLOWING AN INDEMNIFIED PERSON TO ENFORCE ITS RIGHTS HEREUNDER, TO PERSONAL JURISDICTION AND SERVICE AND VENUE IN ANY COURT IN WHICH ANY CLAIM FOR WHICH INDEMNIFICATION MAY BE SOUGHT HEREUNDER IS BROUGHT AGAINST SEABURY OR ANY OTHER INDEMNIFIED PERSON.

The Company and Seabury also hereby irrevocably waive any right the Company and Seabury may have to a trial by jury in respect of any claim based upon or arising out of the engagement, or any transaction or conduct in connection therewith or this Annex.   This Annex may not be amended or otherwise modified except by an instrument signed by both Seabury and the Company.

If any provision hereof shall be determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect or any other provision of this Annex, which shall remain in full force and effect. The provisions of this Annex shall remain in effect indefinitely, notwithstanding any termination or completion of Seabury's engagement.

In the event Seabury or its employees or agents appears as a witness in any action brought against the Company in which an Indemnified Party is not named as a defendant, the Company agrees to reimburse Seabury for all reasonable expenses incurred and time expended by it in connection with appearing as a witness.

Notwithstanding the provisions of the preceding paragraphs, the Company agrees that the total liability of Seabury in connection with this engagement letter shall not in any event exceed the total fees charged by Seabury in connection with this engagement letter.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

## **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

| | | |
|---|---|---|
| In re: | § | (Chapter 11) |
| | § | |
| ARROW AIR, INC. AND | § | Case number 10-28831-AJC |
| ARROW AIR HOLDINGS CORP. | § | Case number 10-28834-AJC |
| | § | |
| | § | (Jointly Administered under |
| Debtors. | § | Case number 10-28831-AJC) |

**UNSWORN DECLARATION OF MICHAEL B. COX IN SUPPORT OF**
**DEBTORS' APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT**
**AND RETENTION OF SEABURY ADVISORS, LLC AS FINANCIAL ADVISORS**
**FOR DEBTORS IN POSSESSION**

Michael B. Cox states and declares:

1.       I am a Senior Managing Director of the firm Seabury Advisors, LLC (and its broker-dealer affiliate Seabury Securities LLC) (collectively "Seabury" or the "Firm"), which is a financial advisory and consultancy firm that maintains offices at 1350 Avenue of the Americas, 25th Floor, New York, New York 10019.  I am authorized to execute this declaration on behalf of Seabury.  Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.[1]

2.       This declaration is being submitted in connection with the proposed retention of Seabury as Financial Advisor to Arrow Air, Inc. ("Arrow") and Arrow Air Holdings Corp. ("Holdings") (collectively, the "Debtors"), pursuant to the terms and conditions set forth in the Seabury Engagement Agreement for Providing Restructuring & Investment Banking Services dated as of June 30, 2010(the "Engagement Letter") and the indemnification agreement between

---

[1] Certain of the disclosures herein relate to matters within the knowledge of other professionals at Seabury and are based on information provided by them.

Seabury and the Debtors attached to the Engagement Letter (the "Indemnification Agreement") (collectively, the "Seabury Agreement").[2]

3.      Seabury is recognized for its expertise in providing financial advisory services to airlines and their shareholders, in financially distressed situations, including advising debtors, creditors and other constituents in Chapter 11 proceedings and serving as investment bankers in numerous cases.

4.      Based on the results of the conflict search conducted to date and described more fully below, to the best of my knowledge, neither I, Seabury nor any member or employee thereof, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors, other parties-in-interest (as reasonably known to us), their respective attorneys, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee, expected as disclosed or otherwise described herein.

5.      To the best of my knowledge, Seabury is a "disinterested person" as the term is defined in section 101(14) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), as modified by section 1107(b) of the Bankruptcy Code.   Neither Seabury nor its members or employees:

(a)      are creditors, equity security holders or insiders of the Debtors;

(b)      are or were, within 2 years before the date of the filing of the petition, a director, officer or employee of the Debtors; or

(c)      have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

---

[2] Unless otherwise stated, capitalized terms used herein shall have the meanings ascribed to them in the Application.

6.      As part of its diverse practice, Seabury appears in numerous cases, proceedings and transactions involving attorneys, accountants, investment bankers and financial consultants, some of which may represent claimants and parties-in-interest in the Debtors' chapter 11 cases. Further, Seabury has in the past, and may in the future, be represented by attorneys and law firms in the legal community, some of whom may be involved in these proceedings.  In addition, Seabury has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these cases.  In connection with this retention, Seabury obtained from counsel to the Debtors the names of individuals and entities, including the Debtors' top 20 unsecured creditors, equity security holders and secured creditors, which may be parties-in-interest in these chapter 11 cases (collectively, the "<u>Potential Parties-in-Interest</u>"), and Seabury researched its "active deal list" that lists all of the active engagements that Seabury currently represents, and questioned its partners, to ascertain its relationships with the Potential Parties-in-Interest.  To the best of my knowledge, information and belief, neither Seabury nor any principal of Seabury has any connection with the Debtors or any Potential Party-in-Interest or the Office of the United States Trustee in the matters for which Seabury is proposed to be retained, except as set forth in paragraph 7 below, and, based on our current knowledge of the professionals involved, and to the best of my knowledge, none of our current business relations constitute interests materially adverse to the Debtors herein in matters upon which Seabury is employed.

7.      Seabury has in the past represented, may currently represent, and likely in the future will represent parties-in-interest of the Debtors in connection with matters unrelated to the Debtors and their chapter 11 cases (except as described below).  This process is conducted by

Seabury's compliance department, and in connection therewith, the following specific disclosures are made:

    (a)    The Debtors may supply services to and be a creditor of one or more companies that Seabury is advising.  The Debtors may also (i) purchase goods or services from, (ii) be an obligor to, and/or (iii) have a commercial alliance with one or more companies that Seabury is advising.  Seabury does not believe that any relationship is related to the Debtors' chapter 11 cases nor will interfere with or impair Seabury's representation of the Debtors in these chapter 11 cases.

    (b)    Seabury is engaged to provide advisory services to various undisclosed airlines. Seabury is currently unable to disclose the identity of these clients due to confidentiality clauses in its engagement letters.  These clients may or may not be direct or indirect competitors of the Debtors.  Seabury believes it would adversely affect the interests of these clients if Seabury were to publicly disclose their names at this time.  Seabury does not believe that its work for these clients will adversely affect the Debtors.  None of the persons involved in this assignment are involved in the assignments for the aforementioned undisclosed clients.


    8.    Seabury has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, their chapter 11 cases.  If this Court approves the proposed employment of Seabury by the Debtors, Seabury will not accept any engagement or perform any services for any entity or person other than the Debtors in this situation.  Seabury will, however, continue to provide professional services to entities or persons that may be creditors of the Debtors or parties in interest in the Debtors' chapter 11 cases; provided,

however, that such services do not relate to, or have any direct connection with, the Debtors' chapter 11 cases.

9.      The Debtors initially retained Seabury on April 15, 2010, and on June 30, 2010 executed an amended and restated engagement letter.  Pursuant to this retention, as amended, and during the prepetition period, the Debtors paid Seabury in full for all prepetition fees and expenses.  Accordingly, Seabury is not a creditor of the Debtors.

10.     Seabury has not shared or agreed to share any of its compensation from the Debtors with any other person, other than a principal, professional or employee of Seabury, as permitted by section 504 of the Bankruptcy Code.  The proposed engagement of Seabury is not prohibited by Fed. R. Bankr. P. 5002.

11.     Based upon the foregoing, I believe Seabury is disinterested as defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code and represents no interest adverse to the Debtors.

12.     Seabury has provided and agrees to continue to provide assistance to the Debtors in accordance with the terms and conditions set forth in the Application and the Engagement Letter, which is annexed to the Application as **Exhibit A**.  Accordingly, I make this declaration in support of an order authorizing such retention.

I declare under the penalty of perjury under the laws of the United States, that the foregoing statements are true and correct.

SEABURY ADVISORS LLC


By: _____
         Michael B. Cox
         Senior Managing Director

Copies to:


All parties served with application for employment.