UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: § | | (Chapter 11) |
| § | | |
| ARROW AIR, INC. AND § | | Case number 10-28831-AJC |
| ARROW AIR HOLDINGS CORP.[1] § | | Case number 10-28834-AJC |
| § | | |
| § | | (Jointly Administered under |
| Debtors. § | | Case number 10-28831-AJC) |

**DEBTORS' EXPEDITED MOTION FOR (A) APPROVAL OF SOLICITATION AND BID PROCEDURES FOR THE ACQUISITION OF THE DEBTORS' BUSINESS AND (B) SCHEDULING A HEARING TO APPROVE THE SELECTION OF THE HIGHEST AND BEST OFFER AND CERTAIN RELATED RELIEF**

**[Hearing Requested on August 5, 2010 at 2:30 a.m.]**

Arrow Air, Inc. ("Arrow") and Arrow Air Holdings Corp. ("Holdings") (collectively, the "Debtors") file this Expedited Motion for (A) Approval of Solicitation and Bid Procedures for the Acquisition of the Debtors' Business and (B) Scheduling a Hearing to Approve the Selection of the Highest and Best Offer and Certain Related Relief (the "Motion").

**Introduction**

1.   The Debtors are a Miami-based international air carrier that provided cargo services to and from international locations. Shortly before filing for bankruptcy protection, the Debtors discontinued flight operations, and are now in the process of winding down their operations and liquidating their assets for the benefit of creditors.

2.   As outlined below in greater detail, both before and after the bankruptcy filings, the Debtors have had discussions with a number of parties regarding a possible business combination transaction or other acquisition of the Business (as defined below) or the underlying

---

[1]   The last four digits of the taxpayer identification number for Arrow Air, Inc. are 9045 and for Arrow Air Holdings Corp. are 0895. The debtors' address is 1701 63rd Avenue, Building 712, Miami, Florida 33126.

H-2963603_1
2963603-1

physical assets. The Debtors, however, have been unable to consummate such a transaction for various reasons. In an effort to maximize the value of their Business, the Debtors have undertaken a number of measures to ensure the continued viability of its operating authorities. The costs of these efforts are substantial.

3. By this Motion, the Debtors seek approval of certain procedures that would govern the solicitation and submission of proposals for the acquisition of the Business or its underlying assets, as well as the scheduling of a hearing to consider the Debtors' selection of the highest and best acquisition offer, if any. The Debtors believe procedures with reasonable deadlines would lend focus to the sale process and will help maximize the value of a potential acquisition transaction.

## Jurisdiction

4. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## Background

A. The Bankruptcy Cases and Debtors' Business Operations.

5. On June 30, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to manage their property and assets as debtors-in-possession under 11 U.S.C. §§ 1107(a) and 1108.

6. The United States Trustee has appointed an official committee of creditors holding unsecured claims (the "Committee") to serve in Arrow's bankruptcy case.

7. The Debtors are a Miami-based international air carrier that provided comprehensive cargo logistic services between the United States and locations in the Caribbean, Central America, and South America. Founded in 1950, Arrow was the largest single cargo carrier operating out of Miami International Airport in 2009, having carried almost 204,000 short tons of freight. Arrow operated a fleet comprised of wide-body DC-10 aircraft and narrow-body 757-200 aircraft.

8. The Debtors maintained branch offices in a number of foreign countries in conjunction with their business operations. Prepetition, the Debtors ceased flight operations and terminated the majority of their employees. The Debtors are therefore in the process of winding down their business operations and liquidating their remaining assets in an orderly fashion.

B.   <u>The Debtors' Prior Efforts to Sell the Business and Related Assets</u>.

9. The Debtors made substantial efforts to consummate a sale of their business and/or underlying assets before seeking bankruptcy protection. Beginning in January 2010, after implementing operational changes and cost-cutting measures to increase the sustainability and profitability of their business operations, the Debtors explored in earnest the possibility of a merger and acquisition transaction with several strategic partners. These transaction efforts continued through February 2010, with discussions and negotiations with four or five potential aviation-related strategic partners regarding various acquisition transactions. The Debtors, however, were ultimately unable to finalize term sheets and/or definitive documentation concerning a possible merger and/or acquisition transaction with any of these parties.

10. In March 2010, facing continuing operating losses, the Debtors renewed and expanded their marketing efforts concerning a business combination transaction and even a sale of their business to a strategic purchaser. To assist in this process, the Debtors retained Seabury

Advisors, LLC ("Seabury"), which is one of the largest investment banking, restructuring, and management consulting firms in the world dedicated to the transportation sector, with its principal focus on the aviation and aerospace industries. The Debtors and Seabury contacted numerous parties that could potentially have an interest in acquiring the business and related assets, including customers, investors, lessors, and strategic buyers or partners known to invest in aviation-related ventures. The potential strategic partners the Debtors had discussions with earlier in 2010 regarding a possible merger and acquisition transaction were again contacted to determine whether they had any renewed interest in consummating a transaction. Additionally, a data room was established with relevant financial and business information to allow interested parties to conduct due diligence.

11. The Debtors' renewed marketing efforts resulted in substantial discussions with some of the former potential strategic partners and a number of new potential purchasers. These discussions took place through June 2010, and resulted in the negotiation of six terms sheets or letters of intent. Ultimately, definitive documentation was negotiated and drafted for two separate purchasers; however, neither of these transactions closed due to reasons beyond the Debtors' control. The sale efforts continued in earnest up until a few days before the Debtors ceased their scheduled service operations, but no viable purchaser ever came forward nor was any transaction ever closed.

12. Since discontinuing flight operations and filing for bankruptcy protection, the Debtors and their professionals have received expressions of interest regarding a potential acquisition of their business or assets from a number of parties, including some parties who the Debtors had discussions with prepetition.

13. The Debtors possess certain assets and authorities as part of their business, including: a number of executory contracts and unexpired leases; certain intellectual property, including tradenames/trademarks and copyrights; goodwill; manuals, logs, and records related to their operating assets and authorities; authorizations that allow them to operate as a commercial airline; computer databases and software; accounts receivable, spare parts and rotables, and other miscellaneous tangible and intangible assets (collectively, the "Business"). The Debtors have taken certain actions (at a substantial monthly cost) to continue the viability of their operating authorities, including the retention of certain employees, aircraft equipment, and facilities. To accomplish a potential sale of the Business in the most efficient and effective manner and to promote an orderly marketing process, the Debtors believe it would be beneficial to establish procedures governing the solicitation and submission of bids by interested third parties. The Debtors reserve the right (in consultation with MP Arrow III, LLC, the Debtors' primary secured lender) to exclude any asset from the sale of the Business.

14. In the event an acceptable offer for the acquisition of the Business is received, the Debtors intend to propose a chapter 11 plan that provides for the issuance of equity in the reorganized Debtors to the purchaser. The Debtors believe that an orderly process for soliciting offers and subsequent auction of the Business will achieve the highest and best offer for a potential transaction, and is therefore in the best interest of the bankruptcy estates and their creditors.

C.   The Proposed Solicitation and Bid Procedures.

15. The Debtors propose the following rules and procedures (the "Bid Procedures") that will govern the solicitation and submission of proposals for the acquisition of the Business.

a.  Notice of the Bid Procedures.  Within two business days after entry of an order approving the Motion and containing the Bid Procedures (the "Bid Procedures Order"), the Debtors will serve a copy of the Bid Procedures Order on (i) all parties who have previously expressed an interest to the Debtors in acquiring all or any portion of the Business, (ii) the United States Trustee, (iii) MP Arrow III, LLC, (iv) counsel for the Committee, and (v) all parties identified on the operative Master Service List.

b.  Bid Proposals.  All bid proposals for the acquisition of the Business (each a "Bid Proposal") must conform to the following requirements:

   i.  Each Bid Proposal must be in writing and contain the material terms and conditions regarding a proposed sale or other transfer of the Business through a stock transaction, which may include the assumption and assignment of executory contracts and unexpired leases.  THE DEBTORS ARE NOT SOLICITING, AND WILL NOT ACCEPT, ANY BID PROPOSALS THAT CONTEMPLATE SOLELY THE ACQUISITION OF THE DEBTORS' OPERATING CERTIFICATE AS A STAND-ALONE ASSET.  Each Bid Proposal shall be subject to bankruptcy court approval, but cannot contain any financing contingency(ies).  The Debtors prefer to receive a Bid Proposal for the acquisition of the Business through a stock transaction, but will give consideration to a sale of individual assets subject to the limitations described above.

   ii.  All Bid Proposals for acquisition of the Business must identify the net cash consideration to be paid to the bankruptcy estates.  Bid Proposals should also account for the costs to be incurred by the Debtors to maintain the assets to be acquired under the Bid Proposal, including operating authorizations, for the period from August 2010 until the closing of the transaction embodied in the Bid Proposal.

   iii.  The person or entity making the Bid Proposal must deliver to the Debtors by the Proposal Deadline (as defined below) the following:  (A) copies of financial statements, letters of credit, and any other documents satisfactory to the Debtors evidencing the prospective purchaser's ability to consummate the contemplated transaction; (B) information and satisfactory assurances that there is no regulatory issue (including the domestic ownership requirements imposed by the Federal Aviation Administration) that would prevent the prospective purchaser from fulfilling the terms, conditions, and obligations under the proposed sale transaction; and (C) the Bid Proposal.  The Debtors, in their sole discretion,

        shall have the right to determine the adequacy of the foregoing information and documents.

  iv.    By the Proposal Deadline, the entity making a Bid Proposal must also tender to the Debtors a good faith deposit, in cash, in an amount equal to the greater of (A) $500,000 or (B) ten percent (10%) of the consideration specified in the Bid Proposal. The Debtors will maintain the deposits (including any additional deposit(s) required under paragraph 15(h) below) in a segregated, non-interest bearing account.

  v.    All Bid Proposals must be delivered to the following parties (collectively, the "Notice Parties"):

        Seabury Advisors, LLC
        Attn: Ginger Hughes
        1350 Avenue of the Americas
        25th Floor
        New York, NY 10019
        Facsimile:(212) 284-1144
        Email: ghughes@seaburygroup.com

        Haynes and Boone, LLP
        Attn: Kourtney P. Lyda
        1 Houston Center
        1221 McKinney Street
        Suite 2100
        Houston, Texas 77010
        Facsimile: (713) 236-5687
        Email: kourtney.lyda@haynesboone.com

        Bracewell & Guiliani LLP
        Attn: Jennifer Feldsher
        1251 Avenue of the Americas
        49th Floor
        New York, New York 10020
        Facsimile: (212) 938-3837
        Email: jennifer.feldsher@bgllp.com

  vi.    No letter of intent or other written proposal submitted to the Debtors prior to the filing of the Motion in connection with the acquisition of the Business (or any subpart thereof) shall be considered as a Bid Proposal for purposes of these Bid Procedures.

c.    Due Diligence Materials. To assist prospective purchasers in their evaluation of the Business, the Debtors will provide access to information

and documentation related to the Business in an online virtual data room (collectively, the "Due Diligence Materials"). As part of the Due Diligence Materials, the Debtors will provide prospective purchasers with information concerning the monthly expenses associated with retaining the assets comprising the Business. Only those parties who sign a confidentiality agreement in a form acceptable to the Debtors will be provided with access to the Due Diligence Materials. All contacts and requests regarding the Due Diligence Materials by potential purchasers should be directed to the Debtors' counsel: Haynes and Boone, LLP, Attn: Kourtney P. Lyda, 1 Houston Center, 1221 McKinney Street, Suite 2100, Houston, Texas 77010, (713) 236-5687, kourtney.lyda@haynesboone.com. The Debtors reserve the right to restrict or deny access to any prospective purchasers.

d. Deadline for Submission of Bid Proposals. Parties must deliver any Bid Proposal so that it is actually received by the Notice Parties on or before August 23, 2010 at 5:00 p.m. prevailing eastern time (the "Proposal Deadline"). Each Bid Proposal shall be irrevocable.

e. Auction. In the event that more than one satisfactory Bid Proposal is submitted, as determined in the sole discretion of the Debtors, the Debtors will conduct an auction (if necessary) on August 25, 2010 at 10:00 a.m. prevailing eastern time (the "Auction") at the offices of Berger Singerman, 200 South Biscayne Boulevard, Suite 1000, Miami, Florida, 33131. ONLY PARTIES WHO SUBMITTED A BID PROPOSAL WILL BE ALLOWED TO PARTICIPATE IN THE AUCTION. The Auction shall be conducted as follows:

   i. At the commencement of the Auction, the Debtors will announce the highest or otherwise best Bid Proposal;

   ii. The Debtors shall then commence an Auction recorded stenographically, calling for incremental bids from bidders who submitted proper Bid Proposals, with minimum overbid increments of $100,000;

   iii. Bidders shall be allowed to caucus privately among themselves (but not with other bidders) at any time; provided, however, that the Debtors may impose uniform reasonable time restrictions on such caucuses so that the Auction may continue and be completed in an orderly and timely manner; and

   iv. The Debtors may adopt such other rules for the Auction (including rules that may depart from those set forth herein) that they anticipate will result in the highest or otherwise best value for the estates and that are not inconsistent with any Bankruptcy Court

order; provided that any changed or additional rules for the Auction are not materially inconsistent with the Bid Procedures and are communicated to all qualified participants at or before the Auction.

f. <u>Selection of the Highest and Best Offer</u>. The Debtors, in their sole discretion, but in consultation with MP Arrow III, LLC and the Committee, will determine which Bid Proposal (if any) is the highest and best offer for the sale or other transfer of the Business (the "<u>Prevailing Bid</u>") and the next highest or otherwise best bid (the "<u>Back-Up Bid</u>")[2]. The following non-exclusive factors will influence the Debtors' determination of the Prevailing Bid and Back-Up Bid: (i) the consideration offered to be paid; (ii) the potential purchaser's financial strength and ability to timely close on the proposed transaction; (iii) any consent issues surrounding the assumption and assignment of executory contracts and unexpired leases; and (iv) any regulatory issues implicated by the proposed sale transaction. The Debtors shall have the right, in their sole discretion, to waive any technical violation of, or deviation from, the Bid Procedures consistent with the goal of maximizing the sale price for the Business.

g. <u>Hearing to Approve the Prevailing Bid</u>. The Bankruptcy Court will hold a hearing on August ___, 2010 at ___:___ __.m. prevailing eastern time (the "<u>Selection Hearing</u>") to consider approving the Debtors' determination of the Prevailing Bid. At the Selection Hearing, the Debtors will seek approval of their selection of the Prevailing Bid and certain related relief.

h. <u>Deposit(s)</u>. Within two business days after conclusion of the Selection Hearing, the proponent of the Prevailing Bid must tender to the Debtors additional cash in order to increase its deposit so that the total deposit for the Prevailing Bid equals 25% of the proposed consideration to be paid under the Prevailing Bid. Such deposit (including the initial deposit required under paragraph 15(b)(iv) above) shall not be refundable unless the Prevailing Bid fails to close solely as a result of the Debtors' breach of their obligations thereunder. In the event the transaction embodied in the Prevailing Bid fails to close and the Debtors' elect to close the transaction described in the Back-Up Bid, then the provisions of this paragraph shall apply to the party who submitted the Back-Up Bid. Any deposit(s) received under these Bid Procedures shall be returned within ten business days after the Bankruptcy Court enters an order approving the Prevailing Bid, except for deposits submitted by the Prevailing Bid and Back-Up Bid.

---

[2] To the extent the Prevailing Bid fails to consummate a transaction or otherwise comply with any requirements imposed during the bankruptcy proceedings, all references to Prevailing Bid shall be substituted with Back-Up Bid.

      i.    <u>Credit Bid</u>.  MP Arrow III, LLC may exercise its right to credit bid all or a portion of its indebtedness in accordance with 11 U.S.C. § 363(k).  Notwithstanding any provision of the Bid Procedures to the contrary, MP Arrow III, LLC shall not be required to submit a Bid Proposal or a Deposit in order to exercise its right to credit bid.

## Relief Requested and Applicable Authority

16.    The Debtors request entry of an order (a) approving the Bid Procedures outlined in the Motion and (b) scheduling a hearing to consider approval of the Debtors' selection of the Prevailing Bid and certain related relief.  The Debtors believe that the Bid Procedures will promote an efficient and effective mechanism for the solicitation and submission of bids for the acquisition of the Business, and are therefore in the best interests of the bankruptcy estate and its creditors.  The Bid Procedures are designed to maximize value for the Debtors' bankruptcy estates, while ensuring an orderly process consistent with the Federal Rules of Bankruptcy Procedure..

17.    The paramount goal in any proposed sale of property of a bankruptcy estate is to maximize the proceeds received by the estate.  *See, e.g., Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992)("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the debtor's duty with respect to such sales is to obtain the highest price or overall greatest benefit possible for the estate." (quoting *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124 (Bankr. N.D. Ga. 1988)).

18.    Case law uniformly recognizes that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate, and therefore are appropriate in the context of bankruptcy sales.  *See, e.g., Integrated Resources*, 347 B.R. 659

(such procedures "encourage bidding and maximize the value of the debtor's assets"); *In re Financial News Network Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [ ] provide for a fair and efficient resolution of bankrupt estates").

19. Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., Integrated Resources*, 147 B.R. at 656-57 (affirming *Integrated Resources*, 135 B.R. 746 (Bankr. S.D.N.Y. 1992)), appeal dismissed, 3 F.3d 49 (2d Cir. 1993); *In re 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).

20. The Bid Procedures are designed to further the Debtors' marketing efforts concerning a sale of the Business through an efficient solicitation process and to facilitate the submission of easily comparable bids. The Bid Procedures provide an orderly process for the Debtors to solicit offers for the Business by, among other things: (i) allowing prospective bidders to perform due diligence, (ii) establishing guidelines and deadlines for prospective bids; and (iii) scheduling an auction, if necessary. The Debtors believe that the Bid Procedures are reasonable, appropriate, and within the Debtors' sound business judgment. Approval of the Bid Procedures is therefore in the best interest of the bankruptcy estates and their creditors.

## Conclusion

21. Based on the foregoing, the Debtors request entry of an order (a) approving and establishing the Bid Procedures; (b) authorizing the Debtors to conduct an auction, if necessary, to determine the highest and best offer for the Business; (c) scheduling a hearing to consider approval of the Debtors' selection of the Prevailing Bid and certain related relief; and (d) any other legal and equitable relief to which the Debtors are entitled.

**CERTIFICATION PURSUANT TO LOCAL RULE 9011-4(B):**

I certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Dated: July 29, 2010

Respectfully submitted:

BERGER SINGERMAN

   /s/ *Jordi Guso*
Paul Steven Singerman
Florida Bar No. 378860
Jordi Guso
Florida Bar No. 0863580
200 South Biscayne Boulevard, Suite 1000
Miami, Florida  33131
Telephone (305) 755-9500
Facsimile (305) 714-4340

– and –

HAYNES AND BOONE, LLP

Kenric D. Kattner
Texas Bar No. 11108400
Doug H. Edwards
Texas Bar No. 24039307
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas  77010
Telephone (713) 547-2000
Facsimile (713) 236-5608

*Counsel for Debtors-in-Possession*