

**ORDERED in the Southern District of Florida on September 22, 2010.**

_____
**A. Jay Cristol, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov**

| | | |
|---|---|---|
| In re: | § | (Chapter 11) |
| | § | |
| ARROW AIR, INC. AND | § | Case number 10-28831-AJC |
| ARROW AIR HOLDINGS CORP.[1] | § | Case number 10-28834-AJC |
| | § | |
| | § | |
| Debtors. | § | (Joint Administration Requested) |

**ORDER APPROVING THE DEBTORS' SELECTION OF JW ACQUISITION, INC.
AS THE PARTY SUBMITTING THE HIGHEST AND BEST OFFER
FOR THE ACQUISITION OF THE DEBTORS' BUSINESS**

THIS CAUSE came before the Court on September 15, 2010, at 2:30 p.m. (the "Hearing") on the Order Reopening Bidding and Setting Hearing to Determine Highest and Best Offer [D.E. No. 219] entered in these bankruptcy cases. The Court finds that proper and adequate notice of the hearing was given in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and orders of the Court, and no other or further notice is

---

[1] The last four digits of the taxpayer identification number for Arrow Air, Inc. are 9045 and for Arrow Air Holdings Corp. are 0895. The debtors' address is 7205 Corporate Center Drive, Suite 300, Miami, Florida 33126.

H-855948.6

Antonini0001

necessary.  Based on the law and facts contained in the pleadings, the arguments of counsel, and the entire record in these bankruptcy cases, good and sufficient cause exists for the granting of the relief described herein.

Accordingly, it is ORDERED that:

1. All objections to the relief granted herein that have not been withdrawn or waived as announced to the Court at the Hearing are overruled.

2. The Debtors' selection of JW Acquisition, Inc. ("JWA") as the party submitting the highest and best offer for the acquisition of the Debtors' business represents the exercise of the debtors' sound business judgment, and is therefore approved.  The Debtors are authorized to enter into the bid proposal submitted by JWA and to take any and all actions necessary and/or appropriate to implement the bid proposal.  A copy of the bid proposal is attached hereto as Exhibit A.

3. This Order shall be effective immediately on execution, notwithstanding the possible application of any applicable law or procedural rule.

####

**Submitted by:**
Jordi Guso, Esq.
BERGER SINGERMAN, P.A.
200 S. Biscayne Blvd., Ste. 1000
Miami, FL 33131
Tel: (305) 755-9500
Fax: (305) 714-4340

Copy to:
Jordi Guso, Esq.
(Attorney Guso is directed to mail a conformed copy of this Order, immediately on receipt, to all parties in interest)

H-855948.6

Antonini0002

JW ACQUISITION, INC.
10305 NW 41st Street, Suite 219
Doral, Florida  33178

September 2, 2010

Haynes and Boone, LLP
Attn: Kourtney P. Lyda
1 Houston Center
1221 McKinney Street
Suite 2100
Houston, Texas  77010
Email: kourtney.lyda@haynesboone.com

Seabury Advisors, LLC
Attn: Ginger Hughes
1350 Avenue of the Americas
25th Floor
New York, New York  10019
Email: ghughes@seaburygroup.com

Bracewell & Giuliani LLP
Attn: Jennifer Feldsher 1251 Avenue of the
Americas 49th Floor
New York, New York  10020
Email: jennifer.feldsher@bgllp.com

Genovese, Joblove & Battista, P.A.
Attn: Glenn D. Moses 100 S.E. Second Street,
44th Floor Miami, Florida  33131
Email: gmoses@gjb-law.com

   Re: In re: Arrow Air, Inc. and Arrow Air Holdings Corp. (collectively, the "Debtors")
     Bankr. Case No. 10-28831-AJC (Jointly Administered)

Notice Parties:

  Reference is made to the *Order Establishing Solicitation and Bid Procedures For the Acquisition of the Debtors' Business and (B) Scheduling a Hearing to Approve the Selection of the Highest and Best Offer and Certain Related Relief* (D.E. 150) (the "Bid Procedures Order") entered in the referenced bankruptcy case (the "Bankruptcy Case") and the *Notice of Auction* (D.E. 189) filed therein.  JW Acquisition, Inc., a Florida corporation (the "Company"), is pleased to submit this bid proposal (the "Bid Proposal") pursuant to the Bid Procedures Order and the Notice of Auction.  The Company and the Purchaser (defined below) agree to be bound by the bid procedures contained in the Bid Procedures Order and the Notice of Auction.

  This Bid Proposal sets out the general terms and conditions of the sale transaction described herein (the "Transaction"); it is not meant to be an exhaustive treatment of such terms

H-855329.4

Antonini0003

and conditions. It is contemplated that the complete terms and conditions governing the Transaction will be embodied in the Definitive Documents (defined below) to be negotiated, mutually agreed upon, and executed and delivered by the parties. Consummation of the Transaction is subject to, among other things, prior approval of the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Bankruptcy Court").

  1. <u>Transaction</u>. Pursuant to the Definitive Documents, the Company or its nominee (the "<u>Purchaser</u>") will purchase 100% of the common stock or other equity interests (collectively, the "<u>Equity Interests</u>") in the reorganized Arrow Air, Inc. ("<u>Reorganized Arrow</u>"), free and clear of any and all liens, claims, interests, and encumbrances (collectively, "<u>Liens</u>"). The Transaction would be implemented pursuant to a chapter 11 plan (the "<u>Plan</u>") to be filed by the Debtors in the Bankruptcy Case. The Debtors shall seek the entry of a final, non-appealable order (the "<u>Confirmation Order</u>"), in form and substance acceptable to the Purchaser.

  2. <u>Plan Conveyance</u>. Under the Plan, the following items shall be transferred to or otherwise vest in Reorganized Arrow, free and clear of any and all Liens.

    a. The assets and authorizations listed on <u>Schedule A</u> attached hereto (the "<u>Included Assets</u>"). The Included Assets shall not include the following property and assets owned by the Debtors: cash and all cash equivalents; accounts receivable located and payable in the United States; aircraft spare parts, including rotables, expendables, parts out for repair, and tooling; all ground support equipment; any furniture, fixtures, and office equipment not located in the Debtors' offices at Miami International Airport, Building 711, Miami, Florida 33126; all claims, rights to payment, and causes of action unrelated to the Included Assets, including the GSB litigation and causes of action arising under chapter 5 of the Bankruptcy Code.

    b. The executory contracts and unexpired leases identified on <u>Schedule B</u> attached hereto (the "<u>Included Contracts</u>"). The Plan shall provide for the Debtors' assumption of the Included Contracts; <u>provided</u>, <u>however</u>, the Purchaser shall have the option of not assuming any Included Contract if the Bankruptcy Court establishes Cure Costs (as defined below) for any Included Contract that the Purchaser is not willing to pay. The Purchaser shall be solely liable for the payment of any and all cure costs (within the meaning of 11 U.S.C. § 365) associated with the assumption of the Included Contracts ("<u>Cure Costs</u>").

  3. <u>Purchase Price</u>. The total purchase price for the Equity Interests would be US$800,000 (the "<u>Purchase Price</u>"). As additional consideration, the Purchaser shall pay up to an aggregate of US$100,000 (the "<u>Cap</u>") of operating costs and expenses, including employee salaries, incurred by the Debtors from September 1, 2010 through the closing of the Transaction (the "<u>Closing</u>") to maintain the assets and authorizations to be transferred or revested in Reorganized Arrow (the "<u>Business Expenses</u>," and collectively with the Purchase Price, the "<u>Consideration</u>"); <u>provided</u>, <u>however</u>, that the Purchaser shall not be obligated to pay any Business Expenses related to insurance or storage/parking fees related to assets that are not Included Assets. The Debtors' estimate of the Business Expenses to be incurred through the Closing, which are itemized on a weekly basis, is attached hereto as <u>Schedule C</u>. The Purchaser shall pay the Business Expenses incurred by the Debtors up to the Cap within three (3) business

days of receipt of an invoice regarding such costs from the Debtors.  The Purchase Price and the balance of any unpaid Business Expenses up to the Cap, shall be payable by wire transfer of immediately available funds to the Debtors at the Closing.

      4.      <u>Discharge</u>.  Pursuant to the Confirmation Order, and subject to the requirements and limitations under the Bankruptcy Code (including 11 U.S.C. § 1141), Reorganized Arrow shall receive a complete discharge of any and all indebtedness, liabilities, and interests against the Debtors or their bankruptcy estates arising through the Closing, and all creditors of, and interests holders in, the Debtors shall be enjoined from pursuing such claims and interests against Reorganized Debtor or the Purchaser; <u>provided</u>, <u>however</u>, Purchaser acknowledges that it understands the contemplated discharge of Reorganized Arrow may not discharge any fine imposed against the Debtors by the United States Department of Justice or be enforceable in any jurisdiction outside the United States.  Other than the Cure Costs and the prospective obligations under the Included Contracts arising after the closing, the Purchaser shall not assume any indebtedness, liability, interest, or other obligation of any type or nature whatsoever of the Debtors.

      5.      <u>DOJ Investigation</u>.  The Debtors agree to use their commercially reasonable best efforts to obtain a release or a non-prosecution agreement from the United States Department of Justice (the "<u>DOJ</u>") regarding any potential claims it may have against the Debtors before the closing of the Transaction; <u>provided</u>, <u>however</u>, the Debtors shall not be required to obtain such release or non-prosecution agreement to the extent it would require the Debtors to pay any funds to the DOJ or requires the Debtors to plead guilty to any charges.

      6.      <u>Regulatory Matters</u>.  The Purchaser shall use commercially reasonable efforts to obtain, to its reasonable satisfaction, all regulatory approvals and/or assurances that all of the Debtors' authorizations permitting it to operate as a commercial airline may be transferred or revested in Reorganized Arrow and the Equity Interests may be conveyed to the Purchaser without any degradation of such authorizations; <u>provided</u>, <u>however</u>, that it shall not be a condition to the Closing that the Purchaser obtain such regulatory approvals and/or assurances; <u>provided</u>, <u>further</u>, that notwithstanding the foregoing, the Debtors shall transfer to the Purchaser all of the Debtors' right, title and interest (if any) in the Debtors' authorizations permitting it to operate as a commercial airline at the Closing, regardless of whether the Purchaser obtains all such regulatory approvals and/or assurances, and the Debtors shall have no rights with respect to such authorizations after the Closing.  The Debtors shall, to the best of their abilities and subject to the Purchaser's payment of the Business Expenses as described in paragraph 3 above, preserve and maintain the airline operating certificate issued by the FAA.

      7.      <u>Definitive Documents; Plan</u>.  The Debtors and Purchaser will draft and engage in good-faith negotiations regarding any and all contracts and other documents necessary to consummate the Transaction, including the Plan and a stock purchase agreement (collectively, the "<u>Definitive Documents</u>").  The Definitive Documents shall contain representations, warranties, conditions, covenants and agreements customary in sales of a debtor under the Bankruptcy Code.  The Definitive Documents shall be reasonably acceptable to the Debtors and Purchaser in both form and substance; <u>provided</u>, <u>however</u>, with respect to the Plan, only the provisions related to the Transaction shall be in form and substance reasonably satisfactory to the Purchaser.

8. **Due Diligence**. Subject to the establishment of mutually acceptable methods and procedures to preserve the confidential information of the Debtors, until the termination of this Bid Proposal or the Closing if the parties enter into Definitive Documents, the Debtors will provide the Purchaser (including its accounting, financial, legal, and other representatives) full access at reasonable times to inspect and evaluate all things related to the Debtors' business, properties, assets, books and records, condition (financial or otherwise), performance, location contracts, personnel, suppliers, distributors, customers, landlords, prospective customers, and business affairs. The Purchaser shall have the right to make photocopies of any materials disclosed pursuant to this paragraph. The Purchaser shall conduct its diligence review in a manner that is not disruptive to the Debtors' business operations. Notwithstanding anything in this paragraph, the conducting of additional due diligence after execution of this Bid Proposal shall not be a condition to the Closing.

9. **Operating Covenants**. Prior to and through the date of the Closing, the Debtors will not assign, transfer, sell, waive, release, reject, abandon, or otherwise dispose of any of the Included Assets or Included Contracts, other than with the prior written consent of the Purchaser.

10. **Closing**. The Closing shall occur on or before three (3) business days after entry of the Confirmation Order, *provided* that the Confirmation Order is enforceable immediately on entry notwithstanding any applicable law or procedural rule.

11. **Deposit**. Pursuant to the Bid Procedures Order, the Company has tendered a deposit of $500,000 (the "Deposit"), which is being held by the Debtors in a segregated, non-interest bearing account. The provisions of the Bid Procedures Order govern the return of the Deposit. Notwithstanding anything to the contrary in the Bid Procedures Order or this Bid Proposal, the Deposit shall be forfeited to the Debtors if the Closing does not occur, except if such failure is the result of (a) the failure to execute the Definitive Documents for a reason other than the Purchaser's failure to negotiate in good faith, (b) the Debtors' breach of their obligations hereunder or under the Definitive Documents, (c) the approval of the Bankruptcy Court of a competing transaction, or (d) the failure of the Bankruptcy Court to enter the Confirmation Order prior to the Outside Date. Such forfeiture shall not constitute an exclusive remedy and shall be in addition to any other legal or equitable remedy the Debtors may have. If the Closing does occur, then the full amount of the Deposit shall be applied to the Consideration payable at the Closing.

12. **Closing Conditions**. In addition to the other terms and conditions specified in this Bid Proposal (including payment of the Consideration), the offer embodied herein is conditioned on (a) good-faith negotiation and execution of the Definitive Documents and (b) the entry of the Confirmation Order, which is not subject to any stay or injunction. The obtaining of a financing arrangement to fund the Consideration shall not be a condition to Closing.

13. **Termination**. The obligations of each party under this Bid Proposal may be terminated by (a) the mutual written agreement of the Debtors and Purchaser, (b) written notice to the other party if such party breaches its material obligations hereunder, (c) either party, if the parties have not executed and delivered the Definitive Documents on or prior to September 30, 2010, (d) the Purchaser, if the Closing has not occurred on or prior to November 22, 2010 (the "Outside Date") or (d) written notice to the other party if the Transaction does not close by the deadline specified in paragraph 10 above. On such termination, the parties shall be relieved of

H-855329.4

their respective obligations under this Bid Proposal; provided, however, that (y) the provisions of paragraphs 11, 14, 15, and 18 herein shall continue to be operative and binding on the parties and (z) the Purchaser shall be responsible for the payment of all Business Expenses incurred through such termination.

14. Expenses. Except as otherwise provided in this Bid Proposal, each party hereto shall bear its respective costs and expenses incurred in connection with the contemplated Transaction, including all fees and expenses of its respective agents, representatives, counsel, and accountants, regardless of whether the Transaction closes.

15. Brokers. Each party represents and warrants to the other party that no investment banker, broker, agent, or finder has been engaged by it or on its behalf in connection with the Transaction or, to its knowledge, is in any way connected with the Transaction or this Bid Proposal. If any party engages a person or entity to act in a manner that would give rise to any claim for any investment banking fee, brokers fee, finders fee, or similar compensation, then such party shall be solely responsible for such fee or other compensation and shall indemnify the other party against such fee or compensation.

16. Multiple Counterparts; Assignment. This Bid Proposal may be executed by the parties hereto in one or more counterparts, each of which shall be deemed an original and each of which shall constitute one and the same instrument. The rights, benefits, duties, and obligations under this Bid Proposal are not assignable by either party; provided, however, the Company may at its sole right and option assign its rights, benefits and duties and obligations under this Bid Proposal to the Purchaser, provided that such entity accepts such assignment and agrees to be bound by the terms and conditions hereof. Such assignment shall not relieve the Company of its obligations regarding the payment of the Consideration.

17. Binding Agreement. Although it is the parties' intention to negotiate the Definitive Documents in good faith, on approval by the Bankruptcy Court of this Bid Proposal as the highest and best offer for the acquisition of the Business, this Bid Proposal constitutes a legally binding and enforceable agreement regarding the contemplated Transaction.

18. Governing Law; Jurisdiction. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PROVISIONS OF THE STATE OF FLORIDA. THE BANKRUPTCY COURT SHALL HAVE JURISDICTION OVER ALL DISPUTES ARISING UNDER OR RELATED TO THIS BID PROPOSAL, AND THE PARTIES EXPRESSLY CONSENT TO SUCH JURISDICTION.

[*Signature Page Follows*]

Please indicate your agreement to the commitments and obligations regarding the Transaction described in this Bid Proposal by signing below in the spaces provided.

Sincerely,

JW ACQUISITION, INC.

By:_____
  Name:
  Title:

H-855329.4

Antonini0008

Agreed to and accepted
on September ___, 2010


ARROW AIR., INC.


By: _____
    Name:
    Title:


ARROW AIR HOLDINGS CORP.


By: _____
    Name:
    Title:

H-855329.4

Antonini0009

## Schedule A
### (List of Included Assets)

1. Authorizations allowing the Debtors to operate as a commercial airline.

2. Manuals, logs, and records related to the operating assets and authorities.

3. Intellectual property, including tradenames/trademarks and copyrights.

4. Goodwill.

5. Computer databases and software and other miscellaneous and intangible assets allowing the Debtors to operate as a commercial airline.

6. Accounts receivable located and payable in locations outside the United States.

7. All furniture, office equipment, and computers owned by the Debtors and located at the Miami International Airport, Building 711, Miami, Florida  33126.

8. All claims, rights to payment, and causes of action related to the Included Assets.

9. ULD equipment (including pallets)

**Schedule B**
**(List of Included Contracts)**

1.  Lease agreement related to Building 711 at the Miami International Airport.

2.  Except for any other real property or aircraft leases, any other executory contract or unexpired lease that has not been previously rejected by the Debtors.

H-855329.4

Antonini0011

**Schedule C**
**(Itemization of Estimated Business Expenses)**

H-855329.3

Antonini0012

**Airline Only Costs**

| | 1-Sep | 10-Sep | 15-Sep | 24-Sep | 1-Oct | 8-Oct | 22-Oct | 1-Nov | 5-Nov | 19-Nov | 1-Dec | 3-Dec | 17-Dec | 31-Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll | | $ 58,853 | | $ 58,853 | | $ 58,853 | $ 58,853 | | $ 58,853 | $ 58,853 | | $ 58,853 | $ 58,853 | $ 58,853 |
| Utilities (Internet/phone) | $ 12,655 | $ - | $ - | $ - | $ 12,655 | $ - | $ - | $ 12,655 | $ - | $ - | $ 12,655 | $ - | $ - | $ - |
| Office space rental | $ 7,500 | | | | $ 7,500 | | | $ 7,500 | | | $ 7,500 | | | |
| Insurance | $ 9,400 | $ - | $ 50,000 | $ - | $ 9,400 | $ - | $ - | $ 9,400 | $ - | $ - | $ 9,400 | $ - | $ - | $ - |
| Misc/Other | $ 3,100 | $ 1,600 | $ 600 | $ 1,600 | $ 2,500 | $ 2,200 | $ 2,200 | $ 2,500 | $ 2,200 | $ 2,200 | $ 4,000 | $ 1,600 | $ 2,200 | $ 1,600 |
| Total | $ 32,655 | $ 60,453 | $ 50,600 | $ 60,453 | $ 32,055 | $ 61,053 | $ 61,053 | $ 32,055 | $ 61,053 | $ 61,053 | $ 33,555 | $ 60,453 | $ 61,053 | $ 60,453 |

Note: Does not include the storage fees for the aircraft in Opa Locka and Marana noted below

| | | | | |
|---|---|---|---|---|
| Storage fees Marana 757 | $ 2,700 | $ 2,790 | $ 2,700 | $ 2,790 |
| Storage fees Opa Locka - DC10 | $ 18,000 | $ 18,600 | $ 18,000 | $ 18,600 |

Antonini0013