UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| In re: | § | (Chapter 11) |
|---|---|---|
| | § | |
| ARROW AIR, INC. AND | § | Case number 10-28831-AJC |
| ARROW AIR HOLDINGS CORP.[1] | § | Case number 10-28834-AJC |
| | § | |
| | § | (Jointly Administered under |
| Debtors. | § | Case number 10-28831-AJC) |

**DEBTORS' OBJECTION TO AVIATION BRAKE SERVICES, INC.
APPLICATION TO ALLOW ADMINISTRATIVE EXPENSE CLAIM**

Arrow Air, Inc. ("Arrow") and Arrow Air Holdings Corp. ("Holdings") (collectively, the "Debtors") file this Objection to Aviation Brake Services, Inc. Application to Allow Administrative Expense Claim (the "Objection").

**Introduction**

1. In its application, Aviation Brake Service Inc. ("ABS") seeks allowance and immediate payment of an alleged administrative expense claim under 11 U.S.C. § 503(b)(9) in the amount of $107,935.00 for brake repair service and parts allegedly received by the Debtors within the 20-day period immediately before the bankruptcy filings. The vast majority of its alleged § 503(b)(9) claim relates to repair services provided to the Debtors, which are not entitled to administrative status under § 503(b)(9). In addition, some of the repair services comprising the alleged claim were provided outside the 20-day period.

2. Based on the Debtors' review of the subject invoices, only $3,430 relates to goods sold to the Debtors in the ordinary course of their business during the 20-day period. The Debtors do not object to the allowance of a § 503(b)(9) claim in the amount of $3,430 in favor of

---

[1] The last four digits of the taxpayer identification number for Arrow Air, Inc. are 9045 and for Arrow Air Holdings Corp. are 0895. The debtors' address is 7205 Corporate Center Drive, Suite 300, Miami, Florida 33126.

ABS. The Debtors, however, do object to immediate payment of this amount or any other portion of the invoices determined to qualify for priority under § 503(b)(9).

**Background**

A.  The Bankruptcy Cases and the Debtors' Business.

3.  On June 30, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to manage their property and assets as debtors-in-possession under 11 U.S.C. §§ 1107(a) and 1108.

4.  The Debtors are a Miami-based international air carrier that provided comprehensive cargo logistic services between the United States and locations in the Caribbean, Central America, and South America. Prepetition, the Debtors ceased flight operations and terminated the majority of their employees. The Debtors are in the process of winding down their business and liquidating their remaining assets in an orderly fashion.

5.  On October 15, 2010, the Debtors filed their Disclosure Statement under 11 U.S.C. § 1125 in Support of the Joint Chapter 11 Plan of the Debtors (the "Disclosure Statement") and the corresponding Joint Chapter 11 Plan of the Debtors (the "Plan").

B.  The Service Contract Between Arrow and ABS.

6.  Prepetition, Arrow and ABS entered into the Brake, Wheel and Tire Component Overhaul/Repair Service Contract Agreement dated April 14, 2008 (the "Service Contract"), in which ABS agreed to perform component overhaul and repair service related to the brakes, wheels, and tires for the B-757 aircraft in Arrow's fleet. Pursuant to the Service Contract, the Debtors would send a wheel or brake to ABS for overhaul/repair, and ABS would perform the necessary repair service and then return the item to the Debtors.

7.      The Service Contract describes the structure of the service program provided by ABS as follows: "The support provided by [ABS] is a program for servicing and maintaining the entire brake, wheel and tires for [Arrow's] fleet." Service Contract, section 1.0. The Service Contracts sets out the pricing rates for the overhaul and repair services for each particular part type. Service Contract, section 2.0. The Service Contract also contemplates that ABS will supply all parts and materials incident to the service and repair of the brakes and wheels. Service Contract, section 1.0(a). The pricing for the replacement parts are included in the price structure for the overhaul and service work.

C.      <u>The Application for Administrative Expense Claim under § 503(b)(9)</u>.

8.      On October 8, 2010, ABS filed its application (D.E. 273) (the "<u>Application</u>") seeking allowance and immediate payment an alleged administrative expense claim under 11 U.S.C. § 503(b)(9) for "various aircraft brakes and related services" purportedly received by the Debtors within the 20-day period immediately before the bankruptcy filings. Application, paragraph 7. The total amount of the § 503(b)(9) claim sought in the Application is $107,935. ASB seeks payment of the alleged § 503(b)(9) claim within 10 days after entry of an order granting the Application.

<u>**Objection**</u>

9.      The Debtors object to the relief requested in the Application on the following grounds: (a) all or substantially of the amounts reflected in the invoices supporting the alleged § 503(b)(9) claim are for services (not goods) provided by ABS and (b) a portion of the invoices relate to services provided outside the 20-day period specified in § 503(b)(9). In addition, the Debtors object to the payment of any portion of the claim determined to qualify for administrative expense priority before plan confirmation.

10. Based on their records and review of the subject invoices, the Debtors believe that only $3,430 of the total amount requested in the Application relates to goods sold to the Debtors in the ordinary course of their business during the 20-day prepetition period. The Debtors do not object to the granting of a claim under § 503(b)(9) in the amount of $3,430 to be paid and treated in accordance with a confirmed Plan.

## Applicable Law and Argument

11. Bankruptcy Code section 503(b)(9) grants administrative expenses priority status to claims for:

> the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9) (emphasis added). The term "goods" is not defined in the Bankruptcy Code. Bankruptcy courts have generally adopted the definition of goods in Article 2 of the Uniform Commercial Code. *See In re Circuit City Stores, Inc.*, 416 B.R. 531 (Bankr. E.D. Va. 2009); *In re Goody's Family Clothing, Inc.*, 401 B.R. 131 (Bankr. D. Del. 2009); *In re Samaritan Alliance LLC*, 2008 Bankr. LEXIS 1830, at *6-7 (Bankr. E.D. Ky. June 20, 2008).

12. Consistent with the plain language of the statute, only amounts related to goods sold and delivered to the Debtors are entitled to administrative expense status under § 503(b)(9); the provision of services is not entitled to such priority. *See, e.g., Circuit City Stores*, 416 B.R. at 534, citing *Brown & Cole Stores, LLC v. Associated Grocers, Inc. (In re Brown & Cole Stores, LLC)*, 375 B.R. 873, 878 (B.A.P. 9th Cir. 2007) ("By the plain terms of the statute, a vendor's right to assert an administrative claim is limited [in that] the vendor must have provided goods (not services)."); *Goody's Family Clothing*, 401 B.R. at 135 ("[B]ased upon the distinction

between 'goods' and 'services' throughout in the Bankruptcy Code, a claim for an administrative expense under section 503(b)(9) cannot be a claim for services provided.")

13.     Courts considering the scope of § 503(b)(9) have recognized that some claims involve "hybrid" transactions requiring the delivery of both goods and services.  It appears that the majority of these courts have adopted the "predominant purpose test" for determining whether a transaction is one for goods or services.  *See*, *e.g.*, *Circuit City*, 416 B.R. 531.  This approach is consistent with the majority of courts deciding whether a hybrid transaction is a transaction in goods or services for purposes of application of the Uniform Commercial Code. *See*, *e.g.*, *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1329-30 (11th Cir. 1998) ("Most courts follow the 'predominant factor test' to determine whether such hybrid contracts are transactions in goods, and therefore covered by the UCC, or transactions in services, and therefore excluded."); *Princess Cruises, Inc. v. General Electric Co.*, 143 F.3d 828 (4th Cir. 1998).  Under the predominant purpose test, a hybrid transaction will be deemed the provision of services if the predominant purpose of the transaction, reasonably stated, is the rendition of services, with goods incidentally involved.  *Princess Cruises*, 143 F.3d at 833, quoting *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974).

14.     Substantially all of the amounts comprising the claim asserted in the Application relate to overhaul/repair <u>services</u> provided prepetition by ABS pursuant to the Service Contract. In the event the Court determines that the business arrangement contemplated under the Service Contract is a hybrid transaction, it is clear beyond cavil that the predominant purpose of the arrangement is the provision of services.  The explicit language in the Service Contract provides that the structure of the contemplated program is "for servicing and maintaining the entire brake, wheel and tires" for Arrow's 757 aircraft.  Service Contract, section 1.0.  Additionally, the

pricing outlined in the Service Contract is based on the services required to overhaul/repair the wheels and brakes; the Service Contract specifically provides that the pricing includes the replacement of parts (subject to certain limitations).  Service Contract, section 2.1.  The thrust of the Services Contract is the provision of overhaul/repair services, and any materials provided thereunder are merely incident to such services.  Because the invoices supporting the asserted claim relate to services (and not goods) provided by ABS and the predominant purpose of the Service Contract is the provision of services, the claim is not entitled to administrative expense priority under § 503(b)(9).

15.     In addition, a portion of the invoices supporting the claim asserted in the Application are for services provided by ABS before the 20-day period specified in § 503(b)(9).  The aggregate amount of these invoices is $18,950.  ABS is not entitled to any administrative expense claim under § 503(b)(9) for such invoices, regardless of whether they relate to goods or services.

16.     As previously noted, however, the Debtors believe that only $3,430 of the total amount requested in the Application relates to goods sold to the Debtors in the ordinary course of their business during the 20-day prepetition period.  The $3,430 relates to goods identified in the ABS invoices nos. 1799, 1873, and 1904.  The Debtors do not object to the granting of a claim under § 503(b)(9) in the amount of $3,430 to be paid and treated in accordance with a confirmed Plan.

17.     If the Court determines that ABS is entitled to a § 503(b)(9) claim, the Debtors object to the immediate payment of any such claim.  Immediate payment of a claim under § 503(b)(9) is improper when the following factors are considered:  (a) prejudice to the debtor, (b) no hardship to the claimant, and (c) potential detriment to other creditors.  *In re Global Home*

*Products, LLC*, 2006 Bankr. LEXIS 3608 (Bankr. D. Del. Dec. 21, 2006) (denying immediate payment of 11 U.S.C. § 503(b)(9) claim); *see also In re Bookbinders' Rest., Inc.*, 2006 Bankr. LEXIS 3749 (Bankr. D. Pa. Dec. 28, 2006).

18.   The Debtors would be prejudiced by immediate payment of any § 503(b)(9) claim because they do not have amounts identified in their cash collateral budget to pay such claims. ASB will suffer no hardship by having any § 503(b)(9) claim paid at the same time all similarly situated creditors are paid under the Plan. Other creditors might be harmed by immediate payment to the extent the use of cash now impedes successful confirmation of the Plan. Therefore, the request for immediate payment should be denied.

## Conclusion

Based on the foregoing, the Debtors request the Court (a) deny the relief requested in the Application and (b) grant the Debtors such other legal and equitable relief to which they are entitled.

**CERTIFICATION PURSUANT TO LOCAL RULE 9011-4(B):**

I certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Dated: October 29, 2010          Respectfully submitted:

BERGER SINGERMAN

   /s/ *Jordi Guso*
Paul Steven Singerman
Florida Bar No. 378860
Jordi Guso
Florida Bar No. 0863580
200 South Biscayne Boulevard, Suite 1000
Miami, Florida  33131
Telephone (305) 755-9500
Facsimile (305) 714-4340

– and –

HAYNES AND BOONE, LLP

Kenric D. Kattner
Texas Bar No. 11108400
Doug H. Edwards
Texas Bar No. 24039307
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas  77010
Telephone (713) 547-2000
Facsimile (713) 236-5608

*Counsel for Debtors-in-Possession*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading has been served on October 29, 2010, on the party identified below by CM/ECF, electronic mail, and/or first class United States mail, postage prepaid.

Richard L. Richards
Richards & Associates
232 Andalusia Ave., Suite 202
Coral Gables, Florida 33134
rrichards@richpa.net

   /s/ *Jordi Guso*
Jordi Guso