IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) | Chapter 11<br>Case No. 10-28831-AJC<br>Case No. 10-28834-AJC |
| ARROW AIR, INC. AND<br>ARROW AIR HOLDINGS CORP. | ) ) ) | (Jointly Administered under<br>Case No. 10-28831-AJC) |
| Debtors. | ) ) | |

**RESPONSE AND OBJECTION TO MOTION FOR TURNOVER
OF SECURITY DEPOSIT IN AID OF IMPLEMENTATION OF
THE AMENDED JOINT PLAN OF THE DEBTORS**

JW Acquisition, Inc. ("JWA"), by and through undersigned counsel, hereby files this Response and Objection (the "Objection") to the *Motion for Turnover of Security Deposit in Aid of Implementation of the Amended Joint Plan of the Debtors* [ECF No. 582] (the "Motion"). In support hereof, JWA respectfully submits as follows:

1.   The Motion must be denied for at least two independent reasons. First, the Motion is procedurally deficient. By the Motion, Reorganized Holdings[1] and MP III seek turnover of the Security Deposit pursuant to, among other sections, section 542 of the Bankruptcy Code. *See* Motion, ¶15. It is beyond dispute that actions for turnover of estate property must be brought by the commencement of an adversary proceeding pursuant to Fed. R.

---

[1] Capitalized terms used, but not defined herein, shall have the meanings set forth in the Motion.

Bank. P. 7001(1).[2]  *See In re Perkins,* 902 F.2d 1254, 12458 (7th Cir. 1990); *In re Estes*, 185 B.R. 745 (Bankr. W.D. Ky 1995).  Thus, the Motion must be denied on this ground alone.[3]

2. Second, JWA, as assignee of the MIA Ground Lease, obtained all of the Debtors' right, title and interest in and to such Lease, including the Security Deposit.  The attempt by Reorganized Holdings and MP III to suggest that the Bid Proposal limited JWA's rights in and to the Security Deposit is belied by the Assumption Order and the Consent Agreement attached thereto.

3. The Assumption Order explicitly approved the Consent Agreement and authorized the Arrow Air, Inc. to enter into such Agreement.  *See* Assumption Order, ¶3. Pursuant to Paragraph 7 of the Consent Agreement, and subject to the terms and conditions of the Consent Agreement, JWA agreed to replenish the security deposit in respect of the Bldg 711 Lease pursuant to section 3.04 of the Bldg 711 Lease in the amount of $179,720.25.  With respect to the MIA Ground Lease, JWA agreed to "**maintain** with MDAD the security deposit required by [MIA] Ground Lease, as such security deposit may change under the terms of the [MIA] Ground Lease."  *See* Ex. A. to Assumption Order, ¶7 (emphasis added).

4. Thus, whereas JWA was obligated to affirmatively pay (i.e., replenish) the security deposit with respect to the Bldg 711 Lease, which was necessary because the lessor

---

[2] Fed. R. Bankr. P. 7001(1) provides that "a proceeding to recover money or property" is an adversary proceeding.
[3] Indeed, under 11th Circuit law, turnover proceedings may be used only in respect of "money due to the debtor without dispute which are fully matured and payable on demand."  *See In re Charter Co.*, 913 F.2d 1575 (11th Cir. 1990).

thereunder applied the security deposit as a result of the Debtors' pre-petition default, JWA was only obligated to maintain the Security Deposit on the MIA Ground Lease.[4]

5. The distinction in the selection of words in paragraph 7 of the Consent Agreement is critical to the analysis. Under the terms of the MIA Ground Lease, the required security deposit is equal to two times the monthly rental as determined based upon the annual rental charge (the "Annual Rental"), which may fluctuate on a yearly basis. *See* §§4.1 and 4.2 of the MIA Ground Lease. Thus, by the terms of the Consent Agreement, JWA agreed, and is required to pay any additional amounts in respect of the Security Deposit as it is calculated over the term of the MIA Ground Lease. However, there was simply no agreement by JWA, nor the Debtors for that matter, for the Security Deposit to be returned to MDAD and to have the full amount "replenished" by JWA

6. Lastly, pursuant to the terms of the Plan, the Collateral Assets assigned to MP III were those owned by the Debtors "as of the Effective Date" of the Plan. The Assumption Order and the Consent Agreement were approved prior to the Effective Date of the Plan and, thus, by the time of the assignment to MP III, the Debtors no longer held any right, title or interest in or to any property comprising the MIA Ground Lease.

[Signature Page Follows]

---

[4] It is also worth noting that while JWA has paid its 50% share of the Cure in respect of the MIA Ground Lease, Reorganized Holdings and MP III have failed to pay their 50% share.

WHEREFORE, JWA respectfully requests that the Court deny the Motion and for such other relief that the Court deems just and appropriate.

Dated:  June 3, 2011

                                                                                          BILZIN SUMBERG BAENA
PRICE & AXELROD LLP
Jay M. Sakalo
1450 Brickell Avenue, Suite 2300
Miami, Florida  33131-2336
Telephone:  (305) 374-7593


By:___/s/ Jay M. Sakalo_____
Florida Bar No. 0156310
jsakalo@bilzin.com